1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| CENTURY SURETY COMPANY, | CASE NO. 13cv1488 JM(JMA) |

11

Plaintiff,

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT

12

v.

13

CAL-REGENT INSURANCE
SERVICES CORPORATION and
STATE NATIONAL INSURANCE
COMPANY, INC.,

14

15

Defendants.

16
_____

17

CAL-REGENT INSURANCE
SERVICES CORPORATION,

18

Counterclaimant,

19

v.

20

CENTURY SURETY COMPANY,

21

Counterdefendant.

22

23

24

    Plaintiff Century Surety Company ("Century") moves for summary judgment or,

25

alternatively, for partial summary judgment.   Defendants Cal-Regent Insurance

26

Services Corporation ("Cal-Regent") and State National Insurance Company, Inc.

27

("State National") separately oppose Century's motion and join in each other's

28

opposition.  Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented

1  appropriate for decision without oral argument.  For the reasons set forth below, the
2  court denies Century's motion for summary judgment.

3                                    **BACKGROUND**

4  The First Amended Complaint "(FAC")

5       The FAC, filed on August 14, 2013, seeks declaratory relief and rescission of the
6  errors and omissions insurance policy issued to Cal-Regent.  "Cal-Regent provides
7  insurance-related services and, at all relevant times, acted as a managing general agent
8  for State National, including with respect to the issuance of liability insurance policies
9  underwritten by State National and the handling of claims arising under those policies."
10  (FAC. ¶6).  On May 25, 2011, Cal-Regent submitted to Century an Application for
11  Agents and Brokers Errors and Omissions Insurance ("Application") to obtain
12  insurance covering potential errors or omissions arising in the course of Cal-Regent's
13  business as a managing general agent.  (FAC ¶9).  Based upon representations by Cal-
14  Regent in the Application, Century issued Commercial Lines Policy CCP 707046 (the
15  "E & O Policy") to Cal-Regent for the policy period of June 22, 2011 to June 22, 2012.
16  (FAC ¶10).  One provision in the Application represented, in effect, that Cal-Regent,
17  after a "comprehensive internal inquiry of investigation," was unaware of any fact,
18  circumstance, situation, incident, or allegation "which might afford grounds for any
19  claim such as would fall under the proposed insurance."  (FAC ¶9).  At the heart of
20  Century's complaint is the allegation that the Application contains material
21  misrepresentations.

22       In the FAC, Century seeks a declaration that it has no obligation to defend or
23  indemnify Cal-Regent in connection with State National's indemnity claims in the
24  Arizona arbitration proceeding.  Century seeks to rescind the E & O Policy based upon
25  the alleged misrepresentations contained in the Application.

26  The Underlying Claim and the Bad Faith Action

27       On December 30, 2010, a bad faith lawsuit was commenced against State
28  National in the Superior Court for Maricopa County, Arizona (the "Bad Faith Action")

by Brian Waldersen and his parents (the "Waldersens"). The Bad Faith Action arose out of a single-vehicle accident that occurred in Sonora, Mexico on February 9, 2007. A passenger in the vehicle, Brian Waldersen, was seriously injured. The Waldersens then sued the owner of the vehicle, Sullivan Car Company, and the driver, Heath Sullivan (the "Sullivans"), for Brian's injuries.

The Sullivans sought coverage for the claims asserted against them under an insurance policy issued to Sullivan Car Company by State National through its managing general agent, Cal-Regent (the "Garage Policy"). (FAC ¶13). Notice of the Waldersens' claims was provided to State National, Cal-Regent, and Vista Claims Services ("Vista Claims"), the agent adjusting claims for policies issued by State National and Cal-Regent. State National, Cal-Regent, and Vista determined that the policy provisions did not provide coverage for accidents in Mexico and denied the claim. The current parties generally agree that the disputed Garage Policy provision was formatted in such a manner as to create an ambiguity concerning the scope of the coverage territory.

After State National issued a denial letter, the Sullivans demanded the $1 million policy limits and advised State National that if the policy limits were not tendered, the Waldersens and the Sullivans intended to settle their dispute, including a stipulated judgment not to execute in favor of the Sullivans as permitted by Arizona state law. (FAC ¶¶16, 17). In response to the demand letter, Vista Claims (the third party claims administrator employed by Cal-Regent) retained counsel who opined that the Sullivan policy did not provide coverage for Waldersens' claims because the accident occurred outside the coverage territory. Cal-Regent acknowledges that it knew of the accident, and had agreed that the policy did not provide coverage for the Waldersens' claim, prior to completing the Application for insurance.

On December 29, 2009, the Sullivans stipulated to judgment in the amount of

$30 million and assigned all their rights to the Waldersens.[1]  The Waldersens agreed not to execute on the stipulated judgment and, on December 30, 2010, the Waldersens filed the Bad Faith Action against State National and Vista Claims in the State of Arizona.  Ultimately, in March 2013, State National and Vista Claims entered into a $4 million settlement with the Waldersens.

On April 19, 2012, Cal-Regent first provided notice to Century of circumstances connected to the Waldersens' bad faith claim.  Cal-Regent also tendered the State National claim to Century, seeking coverage under the E & O Policy.  (FAC ¶29).

The Arbitration

On August 1, 2013, State National commenced an action against Cal-Regent in Arizona State court alleging claims for breach of contract, contractual indemnification and negligence.  (Century Exh. 27).  State National seeks to recover the $4 million settlement of the Waldersens' claim based upon the formatting issue in the Garage Policy.  The parties then agreed to submit the dispute to arbitration and dismissed the state court action.  Century agreed to defend Cal-Regent subject to a reservation of rights.  Century continues to pay Cal-Regent's defense costs in the arbitration proceeding.

The Counterclaim

On August 8, 2013, Cal-Regent filed a counterclaim against Century alleging three claims for relief: breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty.  On April 19, 2012, Cal-Regent alleges that it tendered notice of the Waldersens' claims to Century and sought both defense and indemnity under the 2011 E & O Policy.  Cal-Regent alleges that Century acted in bad faith when it failed to make any attempt to resolve the claims of the Waldersons and State National.

---

[1] The agreement entered into between the Sullivans and the Waldersens is known as a "Damron" agreement under Arizona law.  Under this agreement, the insured stipulates to a judgment and assigns to the claimant all rights the insured has against the insurer and, in exchange, the claimant provides a covenant not to sue the insured.

1

**DISCUSSION**

2    Legal Standards

3        A motion for summary judgment shall be granted where "there is no genuine
4    issue as to any material fact and . . . the moving party is entitled to judgment as a matter
5    of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th
6    Cir. 2005). The moving party bears the initial burden of informing the court of the
7    basis for its motion and identifying those portions of the file which it believes
8    demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,
9    477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that
10   the moving party support its motion with affidavits or other similar materials negating
11   the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on
12   the mere allegations or denials of a pleading, but must "go beyond the pleadings and
13   by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and
14   admissions on file' designate 'specific facts showing that there is a genuine issue for
15   trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on
16   conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040,
17   1045 (9th Cir. 1989).

18       The court must examine the evidence in the light most favorable to the non-
19   moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt
20   as to the existence of any issue of material fact requires denial of the motion. Anderson
21   v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment,
22   when "'the moving party bears the burden of proof at trial, it must come forward with
23   evidence which would entitle it to a directed verdict if the evidence were
24   uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)
25   (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d
26   1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

27   The Motion

28       Century argues that it is entitled to summary judgment on its rescission claim

because there is no genuine issue of material fact that Cal-Regent made material misrepresentations in its 2011 Application for insurance.  "When a policyholder conceals or misrepresents a material fact on an insurance application, the insurer is entitled to rescind the policy." Cal. Civ. Code §1689.  Rescission is the appropriate remedy whether the concealment is "intentional or unintentional." Cal. Ins Code §331.

Ordinary rules of contract interpretation apply to insurance contracts.  "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.  If the contractual language is clear and explicit, it governs." Bank of West v. Superior Court (Industrial Indemnity Co.), 2 Cal. 4th 1254 (1992).  Where an ambiguity exists in an insurance policy, and the insurer caused the ambiguity, the "ambiguities in a policy of insurance are construed against the insurer." Crawford v. Weather Shield Mfg., Inc., 44 Cal.4th 541, 551 (2008).

The parties dispute whether the May 25, 2011 Application contains material misrepresentations.  The parties agree that Cal-Regent was under a duty to disclose whether it was "aware of any fact, circumstance, situation, incident or allegation of negligence or wrongdoing, which might afford grounds for any claim such as would fall under the proposed insurance." (SUM No. 45).  While the parties characterize the evidence differently, the following summarizes pertinent portions of the undisputed evidentiary record.

The Misrepresentations

In broad brush, Century argues that Cal-Regent failed to disclose the Sullivan claim at the time of completing the Application on May 25, 2011, and therefore summary judgment on its rescission claim is appropriate.

Richard Nagby ("Nagby") is the president and CEO of Cal-Regent.  In 2000, Nagby became a managing general agent under the name Cal-Regent by "representing insurance carriers by marketing garage liability insurance programs"  to automobile dealers and various other garage risks such as auto repair shops. (Maricopa Nagby Decl. ¶5). (Nagby Decl. ¶3 - 4).  "In its capacity as managing general agent and

program underwriter, Cal Regent's duties included marketing, reviewing insurance applications, providing insurance quotes and binding coverage." (Nagby Decl., Ct. Dkt. 58-2, ¶3).

At the time of completing the Application, Cal-Regent had entered into a quota share agreement and general agency agreement ("Agreement") with State National and State Automobile Mutual Insurance Company. The Agreement provides that Cal-Regent has claims handling authority. (Nagby Decl. Ct. Dkt. 58-2, ¶4). Cal-Regent does not possess its own claims-handling staff. Pursuant to the Agreement, Cal-Regent would hire claims adjusters to adjust claims. Such a process allowed Cal-Regent "to be kept in the proverbial loop with regard to the status of the claims." Id. The Agreement also contained an indemnification provision which required Cal-Regent to indemnify State National for any claim or expense incurred by State National relating to Cal-Regent's conduct.

Following the accident in Mexico on February 7, 2007, the Sullivans notified State National of the Waldersen accident and State National requested that Cal-Regent adjust the Waldersens' claims. Cal-Regent, in turn, employed Vista Claims to adjust the Waldersens' claims. Based upon the information provided by Cal-Regent, on July 11, 2008, Vista Claims provided a denial letter to the Waldersons on the ground that the accident occurred outside the Garage Policy's coverage territory. Cal-Regent approved the denial of the claim. (Century Exh. 7).

On July 27, 2009, the Waldersens demanded the $1 million policy limits of the Garage Policy to settle their claims against Sullivan. In response, on July 31, 2009, Vista Claims referred the claim for a coverage opinion by Brian Worthington, Esq., a partner in the San Diego law firm of Ryan, Mercaldo & Worthington. On August 7, 2009, Worthington emailed Vista Claims and stated that he had reviewed the denial letter. The email stressed that he needed to see the actual Garage Policy, and not an electronic exemplar of the disputed language. (Century Exh. 13). Worthington based his review on an exemplar of the policy, and not the actual policy provided to the

Sullivans.  On or about August 10, 2009, Worthington completed his coverage opinion and concluded that State National did not have a duty to defend nor indemnify because, among other things, the Garage Policy did not provide coverage for accidents occurring outside the United States.  (Century Exh. 14).  The court highlights that the coverage opinion was entirely based on standardized provisions prepared by the Insurance Service Office ("ISO") – provisions not precisely contained in the Garage Policy issued to the Sullivans.[2]

The Garage Policy provided a $1 million limit of liability and was in place at the time of the 2007 Waldersen/Sullivan accident in Mexico.  (SUM Nos. 8, 9).  The policy consisted of standard coverage forms provided by the ISO.  Cal-Regent used the 2000 ISO form.  The standard provision concerning the coverage territory for the Garage Policy provides:

> "7.    Policy Period, Coverage Territory
>
> Under this Coverage Form, we cover:
>
> a.  "Bodily injury", "property damage" and "losses" occurring; and
>
> b.  "Covered pollution cost or "expense" arising out of "accidents" occurring
>
> during the policy period shown in the Declar-ations and within the coverage territory.
>
> The coverage territory is:
>
> a.  The United States of America;"

(Ct. Dkt. 48-10 at p.65) ("the ISO Policy").  An analysis of this provision is detailed in the Worthington coverage letter.  (Century Exh. 14).  The coverage opinion concluded that both subparagraphs (a) and (b) are modified by the separate phrase

---

[2] The reinsurer, Odyssey Re reviewed and agreed with the denial of coverage. (Nagby Decl., Ct. Dkt. 58-2, ¶7).  In connection with its review of coverage, on July 14, 2008, Odyssey Re communicated to State National its request for a copy of the actual Policy because it "[c]an't tell if the email is communicating the policy wording exactly how it is written in the policy (paragraph structure which could be received differently on my end then how it was typed on your end could be material." (Century Exh. 7).

1    "during the policy period shown in the Declarations and within the coverage territory,"

2    thus limiting coverage to the United States.

3         The actual policy provided to the Sullivans, and unknown to Richard Nagby until

4    August 2012, contains what he describes as a computer formatting error:

5         "7.    Policy Period, Coverage Territory

6              Under this Coverage Form, we cover:

7              a.  "Bodily injury", "property damage" and
8                  "losses" occurring; and

9              b.  "Covered pollution cost or "expense"
10                 arising out of "accidents" occurring
                   during the policy period shown in the
                   Declarations and within the coverage
11                 territory.

12             The coverage territory is:

13             a.  The United States of America;"

14   (Ct. Dkt. 48-10 at p.47 - 48) ("The State National Policy").

15        The court has little difficulty in concluding that the Garage Policy provision is

16   hopelessly ambiguous.  As formatted, only subparagraph (b), related to pollution costs,

17   contains a coverage territory limitation.  Subparagraph (a), related to bodily injury, is

18   not so limited.  While subparagraph (a) contains the word "occurring," suggestive of

19   a forthcoming modification, no such modification is forthcoming because the document

20   was formatted in such a manner to create ambiguities.  The disputed policy language

21   requires the assistance of state laws to resolve the ambiguities contained in the Sullivan

22   Policy.

23        The parties do not dispute that the State National Policy provision is ambiguous

24   and therefor subject to state rules of construction. Shortly after discovery of the mis-

25   formatted provision in August 2012, (Nagby Decl.¶15), the bad faith action settled and

26   was dismissed in March 2013.   Arizona law, like California law, seeks to construe the

27   plain and ordinary meaning of policy language.  Keggi v. Northbrook Prop. & Cas. Ins.

28   Co., 199 Ariz. 43, 13 P.3d 785, 788 (Ariz. Ct.App. 2000); Powerine Oil Co., Inc. v.

1   Superior Court, 37 Cal.4th 377, 390 (2005).  "[I]nsurance coverage is 'interpreted

2   broadly so as to afford the greatest possible protection to the insured, [whereas] . . .

3   exclusionary clauses are interpreted narrowly against the insurer." TRB Investments,

4   Inc. v. Fireman's Fund Ins. Co., 40 Cal.4th 19, 28, (2006); MacKinnon v. Truck Ins.

5   Exchange, 31 Cal.4th 635, 647–648 (2003).  If the plain language of the policy is

6   capable of two or more reasonable constructions, the provision is "ambiguous." Id.

7   "Language in a contract must be interpreted as a whole, and in the circumstances of the

8   case, and cannot be found to be ambiguous in the abstract." Id.  An ambiguous

9   insurance provision is construed broadly in favor of the insured and in order to protect

10  a reasonable expectation of coverage. Id.  In other words, an ambiguous clause "will

11  be construed to provide coverage." Keggi, 13 P.3d at 788; Sec. Ins. Co. of Hartford v.

12  Andersen, 158 Ariz. 426, 428, 763 P.2d 246, 248 (1988) ("[W]here ambiguity in an

13  insurance contract exists, the policy will be construed against the insurer.").

14          Century comes forward with substantial evidence to show that Cal-Regent was

15  aware of the Waldersens' claim at the time of completing the Application on May 25,

16  2011.  Century primarily relies upon evidence that Cal-Regent (1) issued the policy to

17  Sullivan on behalf of State National; (2) acted as the program manager and participated

18  in the decision to deny coverage; (3) obtained a coverage opinion based upon the ISO

19  Policy, and not the State National Policy actually provided to Sullivan; (4) entered into

20  an agreement with State National whereby it promised to indemnify and hold State

21  National harmless from any liability arising from the parties contractual relationship;

22  and (5) assumed the obligation to adjust and pay claims, thus obtaining further actual

23  knowledge about the Sullivan accident.  However, the only evidence of Cal-Regent's

24  knowledge of the improperly formatted provision is Nagby's declaration that he did not

25  know until August 2012 that the State National Policy did not conform to the ISO

26  Policy. The court notes that the August 10, 2009 coverage letter clearly analyzes the

27  ISO Policy, and not the operative State National Policy, and therefore supports the view

28  that Cal-Regent did not have actual knowledge of the potential claim at the time of

1  completing the Application for insurance.[3]

2      Rescission is appropriate wherever there is  concealment, "whether intentional

3  or unintentional."  Cal. Ins. Code §331.  Concealment is defined as "[n]eglect to

4  communicate that which a party knows, and ought to communicate. . . ."  Cal. Ins. Code

5  §330.  On the evidentiary record, whether Cal-Regent knew or should have known that

6  the printed Garage Policy varied from the electronic version presents a question of fact,

7  not appropriately resolved on a motion for summary judgment.  Furthermore, whether

8  Cal-Regent conducted a reasonably diligent investigation to discover, and then

9  disclose, the actual Garage Policy also presents questions of fact not appropriately

10  resolved on this motion for summary judgment.  Similarly, in order to prevail on its

11  claim as a matter of law, Century must identify a legal basis to impute knowledge of

12  the Garage Policy to Cal-Regent prior to completion of the Application.  While there

13  may be a legal basis to attribute knowledge of the Garage Policy to Cal-Regent,

14  Century fails to cite pertinent legal authorities (i.e. legal authorities that may impute

15  knowledge of a corporation's documents, computer systems, employees, or agents to

16  the corporation itself).

17      In conclusion, Century fails to demonstrate that there are no genuine issues of

18  material fact and law.  The court denies summary judgment on whether the Application

19  contains misrepresentations.

20      Materiality

21      Even  assuming  Century  could  establish  a  misrepresentation,  such

22  misrepresentation must be material.  The court concludes that whether the alleged

23  misrepresentations in the Application are material presents a question of fact.  See Cal.

24  Ins. Code §334.  An insurer may waive its right to rescind the insurance policy when,

25

26      [3] The court notes that prior to issuing the coverage letter, on August 7, 2009,
Worthington requested that he be provided with an actual copy of the Garage Policy
27  to verify the terms and conditions of the State National Policy.  The undisputed
evidence reveals that Worthington had based his initial assessment of the Garage
28  Policy on the ISO Policy, and not the operative State National Policy.  As the August
10, 2015, coverage letter was based upon an analysis of the ISO Policy, it appears that
Worthington was never provided with a copy of the actual Garage Policy.

13cv1488

upon learning the true state of affairs, the insurer renews the policy. <u>DuBeck v. John Hancock Mut. Ins. Co.</u>, 234 Cal.App.4th 1254, 1265 (2015). "In general, to constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." <u>Pacific Business Connections, Inc. v. St. Paul Surplus Lines Ins. Co.</u>, 150 Cal.App.4th 517, 525, 58 Cal.Rptr.3d 450 (2007).

Here, Century comes forward with evidence to show that it would not have issued the E & O Policy had it known about the existence of the Waldersens' claims and the State National Policy. (Gookin Decl.)   In contrast, Cal-Regent's evidence shows that, after the disclosure concerning the Waldersens' claims and the formatting error, Century renewed the E & O Policy.  Waiver is ordinarily a question for the trier of fact; "[h]owever, where there are no disputed facts and only one reasonable inference may be drawn, the issue can be determined as a matter of law." <u>Gill v. Rich</u>, 128 Cal.App.4th 1254, 1264, 28 Cal.Rptr.3d 52 (2005).  On this record, the court finds that genuine issues of material fact prevent summary judgment on the materiality of the undisclosed information in the Application because a reasonable jury could infer, based upon the entirety of the factual record, that Century waived its right to rescind the E & O Policy.

In sum, the court denies Century's motion for summary judgment.

**IT IS SO ORDERED.**

DATED:  September 3, 2015

Hon. Jeffrey T. Miller
United States District Judge

cc:          All parties